

www.psychologicalinsight.com
T: (631)806.6117
F: (202)380.0515
Dr.alex@psychologicalinsight.com

## Psychological Evaluation

The information contained in this report is of a sensitive nature. Do not release this report to any party other than those designated to receive it. Any further dissemination of this report is prohibited without a court order or the defendant's permission.

Dru Ruth Nielsen
Haddon, Morgan and Foreman, P.C.
950 17th Street, Suite 1000
Denver, CO 80202

Dear Ms. Nielsen,

I completed an evaluation of Brandon Bourret (DOB: 10/04/1975) at your request. Mr. Bourret is a 47-year-old man who recently pleaded guilty to one count of production of child pornography.

This report addresses the defendant's upbringing, mental health, and other factors typically considered relevant to mitigation. The report focuses on his history and character. I applied a broad scope, identifying themes of maternal alcohol abuse, sexual victimization, home instability, and psychological vulnerabilities. I met with the defendant for nearly five hours, reviewed available records, and administered various psychological tests and questionnaires.

This report does not address other forensic-related issues, such as recidivism risk, treatment ability, competency to proceed, or mental state at the time of the offense.

### Forensic Notification

At the onset of the evaluation, the defendant was informed of the evaluation's nature, purpose, and confidentiality limits. Specifically, I explained his attorney had requested this evaluation. I identified myself as a licensed psychologist, explained this evaluation did not constitute a therapeutic-treatment relationship, and clarified that typical doctor-patient confidentiality did not apply in this case. The defendant was informed that topics discussed would include his background and mental health.

I explained the information collected would be used to form opinions about his case, which would then be shared with his attorney. Mr. Bourret was also advised that he and his attorney would decide whether a report of my findings would be submitted to the Court. The defendant was informed that

MD: #05606
VA:  #0810005165
CO:  #PSY0004805
NJ:  #35SI00597300

Denver Metropolitan
44 Cook Street, Suite 100
Denver, CO 80602

Maryland/D.C.
11303 Amherst Avenue
Wheaton, MD 20902

**Exhibit B**

2    BOURRET, Brandon

if a report was submitted, the judge, the prosecuting attorney, and the defense counsel would receive copies, and I might be called to testify.

Mr. Bourret was told participation in the evaluation was voluntary.  I explained that the interview would be terminated if he declined to participate and his attorney notified.  The defendant was also informed he could refuse to answer any question, but such refusals would be noted and might impact his case negatively.

The defendant demonstrated adequate understanding of the information provided to him by answering questions intended to review his comprehension, and he agreed to participate in the evaluation.

## Sources of Information

The following data sources were considered:
1. Clinical interview with the defendant for a total of five hours at the Geo Group Inc. facility in Aurora on 08/30 and 09/06/2022.  Meetings occurred in a private room, and a structured interview was used.
2. Materials supplied by defense counsel, including:
    a. Presentence Investigation Report (PIR), dated 07/20/2021
    b. Letter written by Denise M. Bourret, the defendant's mother, dated 10/13/2022
3. Psychological testing, including:
    a. Personality Assessment Inventory (PAI)
    b. Substance Abuse Subtle Screening Inventory-4th Edition (SASSI-4)
4. Administration of the Adverse Childhood Experiences (ACEs) Questionnaire
5. Sexual history questionnaires, including:
    a. Hypersexual Behavior Inventory-19 (HBI-19)
    b. Hypersexual Behavior Consequences Scale

## Adverse Childhood Experiences

The following section addresses Mr. Bourret's developmental adversities and psychological vulnerabilities. It is important first to highlight several things about Mr. Bourret's upbringing and psychological deficits. First, adverse or traumatic events are associated with various subsequent problems, including the risk of physical health complaints, psychiatric illness, alcohol and drug use, limited academic and employment success, and early death. Second, exposure to adverse events has a cumulative effect, with exposure to more varied types of episodes associated with more significant distress and risk of consequences.

Mr. Bourret completed the Adverse Childhood Experience (ACE) Questionnaire to assess for adverse childhood events. The ACE Questionnaire is a 10-item self-report designed to identify childhood experiences of abuse, neglect, and household challenges; it lists various adverse childhood experiences but does not list all possible traumas. High scores on the ACE Questionnaire are associated with significant risk factors and negative outcomes. Mr. Bourret reported seven adverse childhood experiences: a household adult, swore, insulted, put down, or humiliated him; an adult five years older or more attempted or made sexual contact with him; the respondent often felt unloved by family; the respondent's parent was often too intoxicated to care for him; parental separation; respondent's parent had a drinking or drug problem; and an adult family member had a psychiatric illness.

3    BOURRET, Brandon

For reference, only 12.5% of the population has experienced four or more adverse childhood experiences[1]. Out of 100 randomly selected individuals, only 13 are expected to have a history of 4 or more adverse childhood events. Furthermore, it is reasonable to assume that the percentage of individuals that have experienced seven adverse experiences is even smaller. The U.S. Department of Justice has recognized many of the factors listed below as contributing to various negative life outcomes.

This following section maps Mr. Bourret's life trajectory, starting with early instability and culminating with present-day issues. The defendant supplied the following details unless otherwise specified.

> *Early attachment, parental instability, and maternal alcohol use*

Mr. Bourret and his mother confirmed that Ms. Bourret abused alcohol up until 2005, causing instability in the defendant's early life. During the clinical interview, the defendant supplied the following:

> She [Ms. Bourret] is a good woman. She is shy. She's got a big heart, but she has made mistakes in her life…It didn't dawn on me that she had a drinking problem until adolescence, until I realized that this isn't normal, but growing up that is how it was. It was when I got older there would be times, definitely age ten years old, when I was about ten years old started taking care of self. I would make a mess and she would come home from work, and she drank a bit while she was at work, until this day she minimizes things.

The defendant reported his mother abused alcohol frequently, sometimes becoming belligerent. During such episodes, she would dredge old conflicts with the defendant, triggering an argument. He also recalled seeing his mother pass out from alcohol on the couch and consuming a liter of alcohol daily at the height of her drinking. The defendant reported his mother accrued a drinking-and-driving-related offense in 1995.

Ms. Bourret confirmed the defendant's account of her drinking in a letter dated 10/13/2022, which contained the following details. In the letter, Ms. Bourret reported being young and unprepared when she had the defendant. She affirmed abusing alcohol for all of the defendant's young life. Ms. Bourret acknowledged drinking at work as well as on her days off. Consequently, she relied on her family for assistance in raising Mr. Bourret.

During the clinical interview, the defendant reported his maternal grandmother served as another caregiver due to his mother's absence. When asked to describe his grandmother, he remarked, "We

---

[1] Centers for Disease Control and Prevention, Kaiser Permanente. The ACE Study Survey Data [Unpublished Data]. Atlanta, Georgia: U.S. Department of Health and Human Services, Centers for Disease Control and Prevention; 2016.

4    BOURRET, Brandon

were very close.  She was kind of tomboyish [sic], stern, firm, but umm, she just had a forceful character, she helped teach me."

Lastly, Mr. Bourret does not know his father's identity.

The information the defendant and his mother supplied was largely consistent with Mr. Bourret's report during his presentence investigation interview (report dated 07/20/2021).

### Adolescence, social isolation, and bullying
Both the defendant and his mother described Mr. Bourret as isolated and lacking friends as a youth. Mr. Bourret and his mother described the defendant as overweight as a youth and struggling to make friends.  Reportedly, the extent of his bullying and victimization were so severe that the defendant dropped out of school.  When asked about his teenage peers and schooling, he supplied the following:

> Until about the seventh grade, I was pretty much a loner, fat kid with a gap in his teeth. I was just very academic, shy, kept to myself…Never dawned on me that I could hangout with these kids [classmates].  *Why did you drop out?*  Bullying, not being able to cope with it.  *Why?*  Weight. I don't have the ability to [sic] charisma, to shoot the [expletive]. I don't have the likability factor.  You can put me in a room of 50 other people, if anyone was to chose [sic] to pick on, I would be the first be victim of bullying. I could not take the teasing well, I couldn't, I didn't have good comebacks.

Ms. Bourret confirmed the defendant's history of isolation in her letter (dated 10/13/2022).  She similarly described a young Mr. Bourret struggling to make friends, citing his weight and appearance as significant barriers.

Mr. Bourret reported he eventually stopped going to school and started associating with other truant kids.  He remarked, "Started hanging out with other truant kids.  *What was mom's response to you dropping out?*  She was supportive, but she always let me make adult decisions, probably not the best move on her part.  I was smoking cigarettes at the age of 14."

The defendant reported his social isolation continued into adulthood, and he remained a loner. The defendant completed the Personality Assessment Inventory (PAI) as part of the evaluation. The PAI is a psychological questionnaire that assesses a broad range of psychiatric and personality features. The defendant produced a valid interpretable protocol. On the PAI, he elevated a scale related to social detachment. Individuals with similar scores are described as having poor interpersonal rapport, flat affect or emotion, and being avoidant of others.

### Child sexual abuse and related sequelae
Mr. Bourret accused his aunt of sexually assaulting him when he was four.  In the defendant's account, his then 17-year-old aunt would bring him into the shower, have him bowl his fist up, and then proceed to rub her vagina against his hand.  The defendant believed the sexual assault spanned a "couple" of episodes.  Reportedly, the abuse was never disclosed.

While all traumatic events are severe and warrant attention, sexual victimization can be particularly destabilizing because of the direct threat to one's body integrity and safety.  Child sexual abuse (CSA) victims experience depression, shame, self-blame, eating disorders, somatic concerns, anxiety, repression, denial, sexual/relationship problems, and feelings of being permanently damaged. Early sexual abuse can negatively impact one's sexual script, the internal guidelines that direct one on how

5    BOURRET, Brandon

to act in sexual and romantic relationships. A substantial portion of the adult sex offender population has a history of early sexual victimization.

During the clinical interview, Mr. Bourret completed two sexual behavior-related inventories, the Hypersexual Behavior Inventory-19 (HBI-19) and Hypersexual Behavior Consequences Scale. Both inventories are face-valid instruments that do not include validity indicators. The defendant's responses on both protocols suggested sex-related problems, including, but not limited to, doing things sexually that are against his values, his sexual behavior taking his life in an unwanted direction, failing to keep important commitments due to his sexual behavior, sexual behavior negatively impacting his self-esteem, and loss of relationships due to his sexual activities.

### Financial instability

During the clinical interview, the defendant described his family as poor. Poverty is associated with various adverse childhood experiences, chronic stress, and other life challenges. Mr. Bourret identified his mother's drinking and erratic behavior as causing the family's financial difficulties. Additionally, the defendant previously reported that the family experienced difficulty when his mother was laid off (PSIR dated 07/20/2021), resulting in their inability to pay the utility bill.

### Psychiatric history and ongoing issues

Mr. Bourret has reported psychiatric symptoms at various times in his life. Adverse childhood experiences are associated with adult psychiatric and substance use issues.

According to the PSIR (dated 07/20/2021), the defendant has had various diagnoses, including major depressive disorder, anxiety, and posttraumatic stress disorder (PTSD), in his life. He is currently prescribed Vistaril (an antihistamine used to manage anxiety). On the PAI, the defendant elevated a scale related to traumatic stress. Such elevations are associated with experiences that cause continued distress and leave one feeling changed or damaged in some fundamental way. Symptoms related to traumatic stress include nightmares, sudden anxiety attacks, and feelings of being irreversibly changed.

In addition to psychiatric issues, the defendant has a history of polysubstance use. While the defendant's score on a substance use screener, the Substance Abuse Subtle Screener Inventory-4th Edition (SASSI-4), did not reveal current substance use problems, Mr. Bourret has previously completed drug and alcohol treatment. According to the PSIR, the defendant participated in dual-diagnosis and residential drug treatment while incarcerated. During the clinical interview, he reported previously using marijuana and hallucinogenics.

## Conclusions

Mr. Bourret was referred for an evaluation to detail his history and adverse experiences for possible mitigation. He recently pleaded guilty to the production of child pornography.

A review of Mr. Bourret's history and character – through interview, a review of collateral records, and psychological testing – revealed a number of experiences and characteristics typical of those introduced as mitigation. Examples detailed above include a chaotic upbringing, maternal substance use, and sexual victimization.

6    BOURRET, Brandon

Again, Mr. Bourret's history revealed various adverse childhood events and traumatic experiences, which can limit one's coping and contribute to a series of psychological vulnerabilities and hardships.

The opinions presented in this report are based on information available at the time of this writing. My opinions are subject to review and modification if new information becomes available.

I thank you for the opportunity to consult on this case.
Signed by:

_____

Alex Rodrigues, PsyD
Licensed Psychologist